FILED
2017 May-30 PM 01:38
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **AAL USA, INC.,** ] | |
| ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v. ] | CASE NO. 2:16-cv-02090-KOB |
| ] | |
| **BLACK HALL, LLC,** *et al.*, ] | |
| ] | |
| ] | |
| **Defendants.** ] | |

# MEMORANDUM OPINION

Federal courts are courts of limited jurisdiction but have a nearly unassailable obligation to exercise jurisdiction when they have it. Only exceptional circumstances justify a federal court's refusal to adjudicate a case properly before it. The Defendants claim this case is such an exceptional one, and have filed a motion for the court to abstain under the *Colorado River* doctrine, or in the alternative, to stay the case based on the court's inherent authority, or, if the court declines to do that, dismiss five counts of the complaint for failing to state a claim. For the reasons discussed below, the court will grant in part and deny in part the Defendants' motions.

I.    RELEVANT BACKGROUND

AAL USA is an aviation services company incorporated in Delaware and with its principal place of business in Alabama. AAL USA filed this case in Jefferson County Circuit Court alleging that two of its officers, Paul Daigle and Keith Woolford, had engaged in tortious conduct against, and breached contracts with, the company. The Defendants removed this action.

Already pending in Madison County Circuit Court was a lawsuit against AAL USA by Black Hall Aerospace involving the same factual universe as AAL USA's suit here. Because the two cases involve the same factual nexus, the court will lay out the events precipitating the

1

litigation of these two cases before describing the claims and procedural posture of each of the actions.

This narrative has three key characters: Oleg Sirbu, Paul Daigle, and Keith Woolford. Oleg Sirbu is the owner, president, and CEO of AAL USA. Paul Daigle is the former CEO of AAL USA, who was hired by AAL in 2011 and elevated to CEO in 2013. Keith Woolford is the former CFO of AAL USA, originally hired to be its finance manager before later promoting him. Mr. Daigle and Mr. Woolford are also owners of Black Hall Aerospace, which they formed to obtain and hold a Federal Aviation Agency "Part 145" license on behalf of AAL USA.

AAL USA works as a subcontractor on contracts with the United States Military. Leidos is the prime contractor on the project. On September 23, 2016, AAL USA received a letter from Leidos informing it that Army Contracting Command had denied AAL access to United States Military bases outside the continental United States. The parties dispute many of the concerning the cause and effect of this letter. But Mr. Sirbu came to believe, based on representations made by the Defendants, that AAL USA was at risk of losing its government contracts. The parties dispute whether these representations were in fact misrepresentations.

To prevent AAL USA from losing its contracts, Mr. Daigle suggested a plan where AAL USA would sell its assets and assign its contract to Black Hall Aerospace. Black Hall, it was believed, would be permitted to carry out the subcontract work and complete the contract with Leidos. In less than a week, AAL USA and Black Hall had drafted and signed an Asset Purchase Agreement (APA) by which AAL USA would sell its assets to Black Hall for $501,660.46. The sale price reflects a five-year "earnings before interest, tax, depreciation and amortization" figure. The parties dispute whether this number was calculated by an independent accounting firm.

Before the APA closed, Mr. Sirbu backed out of the agreement, believing the document to be a fraudulent instrument. AAL USA alleges that Mr. Daigle and Mr. Woolford wrote checks from AAL USA to Black Hall Aerospace for $3.2 million, despite the fact that the transaction never closed.

AAL USA also alleges Mr. Daigle and Mr. Woolford used the company's credit and checking accounts for personal expenses, awarded themselves unauthorized bonuses, and used AAL USA money to buy personal residences and fund their personal business ventures before and after the events surrounding the APA. Further, AAL USA claims Mr. Daigle and Mr. Woolford used company money to buy a jet, and then assigned the ownership of the plane to a company they owned, all while charging AAL USA for use of the jet.

### A.     The Madison County Action

The APA contained a forum selection clause requiring any litigation related to the agreement to occur in Madison County Circuit Court. On October 29, 2016, Black Hall Aerospace filed suit against AAL USA in Madison County Circuit Court. The case is CV-2016-901750, pending before the Honorable Dennis O'Dell.

The amended complaint against AAL USA contained eight counts: declaratory judgment that Black Hall is not in default under the Asset Purchase Agreement, breach of the Asset Purchase Agreement contract, interpleader of a payment under the APA AAL USA refused to accept, intentional interference with contractual relationships, intentional interference with business relationships, defamation, breach of fiduciary duty, and civil conspiracy.

On November 30, 2016, AAL USA filed a counterclaim containing seventeen counts against Black Hall Aerospace. AAL USA alleged that Black Hall Aerospace was liable for fraud and fraudulent misrepresentation, fraudulent suppression, conversion, misappropriation and civil

theft, breach of contract, fraudulent inducement, tortious interference, conspiracy, unjust enrichment, statutory and common law trademark infringement, cybersquatting, violation of the Computer Fraud and Abuse Act, and violation of the federal and Alabama trade secretes acts. AAL USA also claimed it was entitled to specific performance of a contract transferring ownership shares of Black Hall Aerospace to AAL USA, a constructive trust over Black Hall Aerospace's assets, and an accounting.

The state court has partially stayed discovery. At the time this motion was briefed, no depositions had occurred, and while AAL USA had served discovery requests, no responses had been produced on federal question jurisdiction and supplemental jurisdiction over the state law claims.

### B. The Jefferson County Action

On November 16, 2016, AAL USA filed suit in the Birmingham division of Jefferson County Circuit Court against Black Hall Aerospace, Black Hall, LLC, Corvis Arrow, LLC, Cold Harbor Certifications, Inc., Hindsight Coffee, LLC, Paul Daigle, Keith Woolford, Iberia Bank Corp, IberiaBank, and a set of fictitious defendants. The complaint contained fifteen counts: fraud and fraudulent concealment, fraudulent suppression, conversion, misappropriation, and civil theft, breach of contracts between AAL USA and Mr. Daigle and Mr. Woolford, violation of Alabama's trade secret statute, specific performance of contract to transfer Black Hall Aerospace's shares to AAL USA, breach of fiduciary duty, fraudulent inducement, tortious interference, conspiracy, unjust enrichment, faithless servant doctrine, declaratory judgment that AAL owns Black Hall, and injunctive relief.

On December 2, 2016 AAL USA voluntarily dismissed Black Hall Aerospace from the Jefferson County Action. The remaining defendants removed the case to federal court on December 30, 2016.

Discovery is in its infancy in this case. However, substantial motion practice has already occurred. The parties have filed a motion to abstain, a motion to stay, two motions to strike, a motion for summary judgment, a motion to dismiss, an emergency motion for order to show cause, a motion for relief from injunctive order, fourteen motions to quash, and a motion to compel.

## II. LEGAL STANDARDS

The Defendants have moved for a stay of proceeding, or in the alternative to dismiss to dismiss five counts of the complaint for failure to state a claim. Accordingly, two legal standards are applicable.

### A. *Colorado River* Abstention

When a federal court possess subject matter jurisdiction over a case before it, it generally has an "unflagging obligation" to exercise its power to adjudicate the controversy. *Colo. River Water Conservation Dist.*, 424 U.S. 800, 817 (1976)). Exceptions to this rule arise when exercise of federal jurisdiction would threaten the balance of federal and state power enshrined in our constitutional system. *See id.*, 424 U.S. at 813–17 (describing the federalism rationales underlying the *Pullman*, *Thibodaux*, and *Younger* abstention doctrines).

A federal court may abstain in some circumstances where federalism's concern for "proper constitutional adjudication and regard for federal-state relations" are not relevant considerations. *Colo. River*, 424 U.S. at 817. Instead, a federal court may ground its decision to abstain on the principle of "(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id*. (quoting *Kerotest Mfg. Co. v.*

*C-O-Two Fire Equipment Co*., 342 U.S. 180, 183 (1952)). Because this form of abstention does not invoke the "weightier" structural constitutional justification of other abstention doctrines, *Colorado River* abstention "is permissible in fewer circumstances than are the other abstention doctrines, which themselves carve out only slender exceptions to the robust duty to exercise jurisdiction." *Ambrosia Coal & Const. Co. v. Pages Morales*, 368 F.3d 1320, 1331 (11th Cir. 2004). Accordingly, *Colorado River* abstention is an "extraordinary and narrow" doctrine. *Colo. River*, 424 U.S. at 813.

To abstain under *Colorado* River, a district court must make two findings: (1) a parallel proceeding is occurring in state court, and (2) exceptional circumstances are present. *See Ambrosia Coal*, 368 F.3d at 1328. The doctrine requires exceptional circumstances because permitting federal courts to abstain in the midst of *any* parallel state proceeding would "betray" a federal court's obligation to exercising jurisdiction conferred on it. *Id*.

The Eleventh Circuit has set out six factors to guide a district's court's discretion in determining whether a case has the exceptional circumstances required for *Colorado River* abstention:

> (1) whether one of the courts has assumed jurisdiction over property, (2) the inconvenience of the federal forum, (3) the potential for piecemeal litigation, (4) the order in which the fora obtained jurisdiction, (5) whether state or federal law will be applied, and (6) the adequacy of the state court to protect the parties' rights.

*Ambrosia Coal*, 368 F.3d at 1331. When a court weighs these factors, "[n]o one factor is necessarily determinative," *Colo. River*, 424 U.S. at 818, and "[t]he weight to be given to any one factor may vary greatly from case to case." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 16 (1983).

    **B.**    **Motion to Dismiss for Failure to State a Claim**

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. The Federal Rules of Civil Procedure require the complaint to provide a short and plain statement of the claim" demonstrating that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(1). A plaintiff must provide the grounds of his entitlement, but Rule 8 rarely requires detailed factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Rule 8 does, however, demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleadings that contain nothing more than a formulaic recitation of the elements of a cause of action do not meet Rule 8 standards nor do pleadings suffice that are based merely upon labels or conclusions or naked assertions without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

### III. DISCUSSION

#### A. *Colorado River* Abstention

Defendants argue that this court should abstain from hearing this case on the basis of *Colorado River* and defer to existing litigation in state court. Although the court agrees the Madison County action is a parallel proceeding, it will not abstain because this case lacks the extraordinary circumstances required by *Colorado River*.

##### 1. *Parallel Proceeding*

*Colorado River* abstention only applies when a parallel proceeding exists in state court. To determine whether a state and federal action are parallel, a court looks to see whether the "proceedings involve substantially the same parties and substantially the same issues." *Ambrosia Coal*, 368 F.3d at 1330. This analysis is "flexible" and "pragmatic"; a court is not bound by the formalistic framing of the issues and parties in the pleadings. *Id*. at 1229–30. Otherwise, "only litigants bereft of imagination would ever face the possibility of an unwanted abstention order, as virtually all cases could be framed to include additional issues or parties." *Id.* at 1330.

7

The Madison County Case and this action are parallel. True, AAL USA is the only entity who is a party to both actions. But that fact is a slanted truth. As AAL USA acknowledges, Mr. Daigle and Mr. Woolford are in control of Black Hall Aerospace. (Doc. 44 at 34). Although a corporation does have a separate legal personhood from the individuals who form it, it would be overly formalistic—and not in keeping with the flexible and pragmatic character of *Colorado River* analysis—for the court to simply ignore that the Defendants in this action are principals of the plaintiff corporation in the Madison County action. Similarly, the additional defendants in this action are either companies owned by Mr. Daigle and Mr. Woolford or AAL USA's bank. Given that reality, the court concludes that the Madison County case and this case are composed of substantially the same parties.

The two cases are also considering substantially the same issues. Both sides haves oversimplified the two actions. AAL USA contends the Madison County action is about the APA while this action is about Mr. Daigle and Mr. Woolford's acts. But the Madison County case is litigating the same allegedly fraudulent conduct—misrepresentations surrounding the APA. AAL USA may be seeking different damages (from Black Hall Aerospace versus Mr. Daigle and Mr. Woolford individually) in the two actions, but the same fundamental conduct is at issue. For the same reasons substantial—and not identical—identity of parties and issues is required for a proceeding to be parallel, failure to seek identical damages does not make two cases divergent.

AAL USA seeks relief in this action it does not appear to seek in the Madison County case. For instance, AAL USA claims Mr. Woolford and Mr. Daigle should repay compensation they accepted to AAL USA under the faithless servant doctrine and has made claims against ServisFirst, its bank. But these claims do not alter the fact that the issues in the two actions are *substantially* similar.

8

Neither, as the Defendants suggest, is the validity of the APA dispositive of *all* of the issues in this case. AAL USA's claims against Mr. Daigle and Mr. Woolford are based on wrongful conduct separate and apart from conduct surrounding the APA. While the enforceability of the agreement might be a key question in both cases, from what the court can discern, the answer to that question will not resolve whether Mr. Daigle or Mr. Woolford converted AAL USA property prior to drafting the APA, for instance. The Madison County action and this case are neither wholly distinct nor entirely identical. Because of the significant overlap, the court finds that the two cases involve substantially the same issues and parties, and, therefore, that the Madison County action is a parallel proceeding to this case.

        2.    *Colorado River Factors*

Because the court has found that a parallel proceeding to this action exists, it must consider the *Colorado River* factors to decide whether to abstain.

First, the court considers whether the court in either case has acquired *in rem* jurisdiction. *Ambrosia Coal*, 368 F.3d at 1331. Neither of the two cases is *in rem*, so the first factor is neutral.

Second, the court considers the relative inconvenience of the fora, and focuses "primarily on the physical proximity of the federal forum to the evidence and witnesses." *Ambrosia Coal*, 368 F.3d at 1331–32. The Madison County case is pending in Huntsville, Alabama, approximately ninety miles north of where this court sits, and the majority of the evidence and witnesses appear to be Huntsville. But when "the federal forum and the state forum are in close geographic proximity, the fora are equally convenient and the factor cuts against abstention." *Reiseck v. Universal Commc'ns of Miami, Inc.*, 141 F. Supp. 3d 1295, 1305 (S.D. Fla. 2015) (citations omitted) (citing *Jackson-Platts*, 727 F.3d at 1141.

The Defendants acknowledge the precedents finding federal and state forums in this same general area to be equally convenient, but attempts to distinguish them by noting those cases

9

involved a distance of 50 or so miles between forums while this case is close to 100 miles. These additional 50 miles—43 minutes of drive time, assuming one is traveling the speed limit on the interstate—constitutes a "substantial prejudice," in the Defendants' mind. (Doc. 8 at 25). The Defendants do not support this conclusory diagnosis with any evidence and reasoning, and the court cannot marshal any to buttress the Defendants' conclusion. Ninety miles is close enough; alternatively the court can transfer the case to the Northeastern Division. Given the proximity of the state and federal forum (the state forum is within the Northern District of Alabama, after all), the court finds the state and federal fora to be equally convenient, and, therefore, that this factor weighs against abstention.

The third factor—the potential for piecemeal litigation—is the most hotly contested. Inefficient litigation is a risk whenever parallel proceedings exist; abstention is only warranted if that risk is "abnormally excessive or deleterious." *Ambrosia Coal*, 368 F.3d at 1333. The Defendants argue that the substantial overlap between the two cases coupled with the fact that AAL USA has issued identical discovery requests in both cases elevates this situation into the exceptional category. (Doc. 8 at 21–23).

The court disagrees. In *Colorado River*, the United States brought suit against approximately 1,000 water users in federal court. A suit addressing the same water rights was already pending in state court. The most important factor in the Supreme Court's reasoning in finding abstention warranted was the McCarran Amendment, "a clear federal policy" favoring "avoidance of piecemeal adjudication of water rights in a river system." *Colo. River*, 424 U.S. at 819. The Court analogized this federal policy to a form of *in rem* jurisdiction for water rights. *Id.*

*Colorado River* evidences exceptional circumstances. Piecemeal adjudication of water rights is "abnormally excessive or deleterious." *Ambrosia Coal*, 368 F.3d at 1333. But piecemeal

10

adjudication of contractual rights is not. *See id*. (district court erred in abstaining based on fear of "inconsistent results or piecemeal litigation would likely result simply *because both cases deal with the validity of the Agreement*") (emphasis added). Considering the same issues of contractual interpretation or application in two separate actions—without more—is insufficient to justify abstention.

Even if the court abstained, the possibility of piecemeal litigation would not necessarily be avoided. AAL USA's counterclaim against Black Hall in the Madison County action appears to be a mandatory counterclaim. From what the court can tell, AAL USA could have likely properly joined their claims in this action with the counterclaim in Madison County as a cross claim because a right to relief against the Defendants in both actions arises out of the same transaction and occurrence, and at least one common issue of law or fact will arise.

Although AAL USA *could* possibly bring the claims together in a single action, the court will not be able to *force* AAL USA to do so. A cross claim is permissive—it may, but not must, be brought. Where a parallel proceeding contains a claim that could be permissively joined to the other action, abstention does not further the goal of avoiding piecemeal litigation. *See Am. Mfrs. Mut. Ins. Co. v. Edward D. Stone, Jr. & Assoc.*, 743 F.2d 1519, 1525 (11th Cir. 1984) ("Because the district court cannot force AMMIC to assert its claims as permissive cross claims in the state proceeding, the stay order has not avoided, but has merely delayed, piecemeal consideration of the claims."). The Defendants have not shown that an abnormal risk of piecemeal litigation is present in this case, or that abstention, if granted, would avoid that risk. For those two reasons, the third factor weighs against abstention.

The fourth factor is the order jurisdiction was obtained and the relative progress of each of the cases. *Ambrosia Coal*, 368 F.3d at 1331. The Supreme Court has clarified that the key

11

consideration is how far the parallel action has progressed. *See Moses H. Cone*, 460 U.S. at 21, 103 (explaining the factor "should not be measured exclusively by which complaint was filed first, but rather in terms of *how much progress has been made* in the two actions.") (emphasis added). In the court's estimation, the Madison County case and this action are at nearly the same stage of the litigation process. Discovery is in its infancy in both cases. Further, the Madison County court has stayed components of discovery that would appear critical to resolving *this* case. Accordingly, this factor does not support abstention.[1]

Fifth, the court considers whether federal law provides the rule of decision. AAL's brings claims under both federal and state law. The presence of state law questions favor abstention only when the issue is "particularly complex or best left for state courts to resolve." *Jackson-Platts*, 727 F.3d at 1143. Further, the presence of a federal cause of action cautions against abstention. *Moses H. Cone*, 460 U.S. at 26 ("Although in some rare circumstances the presence of state-law issues may weigh in favor of [abstention] . . . the presence of federal-law issues must always be a major consideration weighing against surrender."). The state law claims in this case are not complex. Conversion, breach of contract, tortious interference, and the like, are topics a first-year law student would be expected to have mastered come exam time. In so stating, the court does not ignore the complexity of the facts in this case; but the factor focuses not on factual complexity but the complexity of the state law. Given the lack of complex state law claims and the presence of claims arising under federal law, the fifth factor weighs against abstention.

---

1 The Defendants also argue that a forum selection clause contained in the APA designating Huntsville, Alabama as the location for litigation related to the agreement to occur weighs in favor of abstention. But AAL USA and Black Hall Aerospace executed the APA, and so the forum selection clause could only govern disputes between those parties. Because Black Hall Aerospace is no longer a party to this action, the forum selection clause is irrelevant.

Finally, the court weighs the sixth factor—the ability of the fora to protect the parties' rights. If both fora protect the parties' rights, the factor is neutral. *Ambrosia Coal*, 368 F.3d 1320, 1334 (11th Cir. 2004) ("This factor will only weigh in favor or against abstention when one of the fora is inadequate to protect a party's rights."). This court and the state court are equally capable of adjudicating this dispute while protecting the parties' rights. The claims and defenses raised in each action could be properly presented in the other. Therefore, the final factor is neutral.

Unsurprisingly, the parties have traded accusations of forum shopping and jurisdictional gamesmanship. The court is not persuaded by either side's charges and does not find them to weigh for or against abstention. The Defendants claim the "only reason" AAL USA filed this action was "to further [a] campaign to destroy Black Hall and its officers." (Doc. 8 at 23). AAL USA asserts that the Defendants removed this case and filed a motion to abstain as an end around the state court's order denying the Defendants' motion to dismiss, consolidate, or transfer. Rather than attempting to divine the motives behind a party's strategic choices in litigation, the court will restrict its analysis to whether a motion is procedurally proper and meritorious. By doing so, parties with impure motives will be found out by the substance of their arguments.

Taken together, the factors do not overcome the "heavy burden" of showing that a federal court that possess jurisdiction should decline to exercise it. Although no single factor is dispositive, the court believes it to be unlikely that a situation where no single factor weighs in favor of abstention—and some weigh against—could constitute the exceptional circumstances contemplated by *Colorado River*. This case does not have the "exceptional circumstances" and

"the clearest of justifications" that warrant abstention. *Moses H. Cone*, 460 U.S. at 25 (internal quotations omitted). For that reason, the court will deny the motion to abstain.

### B. Stay of Case Pending Resolution of Madison County Action

The Defendants also ask this court to use its inherent power to control its docket to stay this case pending resolution of the civil action in state court in Madison County. For the same reasons abstention is not appropriate, a stay likewise is not warranted. If a stay were granted on these grounds, the court would be effectively surrendering its obligation to exercise jurisdiction. Therefore, the court will deny the Defendants' motion to stay.[2]

### C. Motion to Dismiss

The Defendants last argument is that AAL USA's claims for breach of contract, specific performance, accounting, constructive trust, and unjust enrichment should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which this court can grant relief. The court will grant in part and deny in part the Defendants' motion.

1. *Breach of Contract and Specific Performance*

The Defendants argue AAL USA's counts for Breach of Contract (Count Four) and Specific Performance (Count Nine) should be dismissed for failure to state a claim because AAL USA has not alleged the existence of a contract between AAL USA and the Defendants requiring transfer of Black Hall Aerospace's ownership shares to AAL USA. In both Counts Four and Nine, AAL alleges that Mr. Daigle and Mr. Woolford had an express contract for the transfer of Black Hall Aerospace shares to AAL USA. However, this legal conclusion is not supported by the facts pled. The complaint does not plead facts that, if proven, would the existence of a contract. The complaint does state Mr. Daigle made a "promise" to transfer Black Hall

---

2 The court will consider the grounds raised in the Defendants' other motion to stay (doc. 79) in a separate opinion.

14

Aerospace shares to AAL USA. (Doc. 1-7 at 98). But AAL USA has not plead facts showing that it extracted consideration from Mr. Daigle in exchange for that promise. Therefore, AAL USA has not stated a claim for breach of contract, and the court will grant the motion to dismiss Count Four and Count Nine of the complaint.

    2.    *Accounting and Constructive Trust*

The Defendants argue AAL's counts for Accounting (Count Eight) and a Constructive Trust (Count Ten) should be dismissed because they seek relief against Black Hall Aerospace, which is no longer a party. However, at this stage of the litigation, who possesses (or has liquidated) assets rightfully belonging to AAL USA is unclear.

The Defendants accuse AAL USA of trying to have it both ways: distinguishing Black Hall Aerospace from Mr. Daigle and Mr. Woolford for abstention purposes but conflating them for these two counts. However, on the face of this complaint, AAL USA has stated a claim for both causes of action by tying these counts directly to the conduct of Mr. Daigle and Mr. Woolford. *See* (Doc. 1-7 at 115) ("Daigle [and] Woolford . . . are in possession of [AAL USA] assets"); (Doc. 1-7 at 116–17). Therefore, the court will deny the motion to dismiss Counts Eight and Ten of the complaint.

    3.    *Unjust Enrichment*

Finally, the Defendants seek dismissal of AAL USA's count for Unjust Enrichment (Count Fourteen) because it does not allege that AAL USA had a "reasonable expectation of compensation" in exchange for paying Mr. Daigle and Mr. Woolford. The Defendants' argue AAL does not "allege that Daigle and Woolford's actions failed to compensate AAL for their employment or that they were derelict in their duties as employees." (Doc. 65 at 17).

AAL USA may not have used those magic words, but pleading is not spellcraft. *The Federal Rules of Civil Procedure* require "a short and plain statement of the claim showing that

the pleader is entitled to relief," not recitation of an incantation. Fed. R. Civ. P. 8(a)(2). Contrary to the Defendants' assertions, the complaint is riddled with facts that, if proven, would demonstrate that AAL USA had not received compensation in the form of valuable work from Mr. Daigle and Mr. Woolford's employment or that the two employees were derelict in their duties by, among other conduct, their misappropriation of company assets. Therefore, the court will deny the motion to dismiss count fourteen of the complaint.

## IV. CONCLUSION

The court will grant in part and deny in part the Defendants' motion. The court will deny the motion as to its request to abstain or stay proceedings, as well as its request to dismiss Counts Eight (Accounting), Ten (Constructive Trust), and Fourteen (Unjust Enrichment) of the complaint. The court will grant the motion as to their request to dismiss Count Four (Breach of Contract) and Count Nine (Specific Performance). AAL USA will have 14 days to file an amended complaint as to those two counts. The court will enter a separate order consistent with this opinion.

**DONE** this 30th day of May, 2017.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE