FILED
2018 Jun-19 PM 02:03
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| AAL USA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:16-cv-02090-KOB |
| | ) | |
| BLACK HALL AEROSPACE, INC., | ) | **This Document Relates to Only to** |
| et al., | ) | Case No. 2:16-cv-02090-KOB |
| | ) | |
| **Defendants.** | ) | |

## **MEMORANDUM OPINION**

This matter is before the court on Counterclaim-Defendant AAL Group's motion to dismiss the counterclaim asserted against it by Defendant-Counterclaim Plaintiff Keith Woolford. (Doc. 299).

Mr. Woolford asserts two causes of action against AAL Group under Alabama law: (1) defamation ("Count One"); and (2) civil conspiracy ("Count Five"). The defamation claim arises from written and oral statements made by two individuals, Saul Kirsch and Oleg Sirbu, who Mr. Woolford asserts acted as AAL Group's agents in making those statements. The civil conspiracy claim arises from an alleged conspiracy between AAL Group and other counterclaim-defendants to engage in defamation of Mr. Woolford.

The court WILL GRANT IN PART AND DENY IN PART AAL Group's motion to dismiss the counterclaim. The court WILL DISMISS WITHOUT PREJUDICE the defamation claim against AAL Group to the extent that it rests on allegedly defamatory statements made by Mr. Kirsch, because the counterclaim alleges no facts showing that Mr. Kirsch acted as AAL Group's agent. But the court WILL NOT DISMISS the rest of the defamation claim because the counterclaim alleges sufficient facts to show that Oleg Sirbu acted as AAL Group's agent. And

because the defamation claim survives, the court WILL NOT DISMISS the civil conspiracy claim.

I. BACKGROUND

On November 16, 2016, Plaintiff AAL USA filed a lawsuit against Keith Woolford and a number of related defendants. (Doc. 1-2 at 2). AAL USA later amended its complaint, still naming Mr. Woolford as one of the defendants. (Doc. 96). On June 27, 2017, Mr. Woolford and his codefendants filed an answer and a counterclaim. (Doc. 103). In the counterclaim, they named AAL USA as a counterclaim-defendant, and joined as additional counterclaim-defendants AAL Group, Oleg Sirbu, Oleg Fidelskiy, and Saul Kirsch. (*Id.* at 39–40). The court recently dismissed Mr. Fidelskiy for improper service. (Doc. 373).

All of the parties except Mr. Woolford later reached a settlement agreement in which they agreed to dismiss all claims and counterclaims asserted between them. (*See* Doc. 364). As a result, the only parties remaining in this case are Plaintiff AAL USA, Defendant-Counterclaim-Plaintiff Mr. Woolford, and Counterclaim-Defendants AAL Group, Mr. Fidelskiy, Mr. Sirbu, and Mr. Kirsch; and the only claims remaining in this case are AAL USA's claims against Mr. Woolford, and Mr. Woolford's counterclaim against AAL USA, AAL Group, Mr. Fidelskiy, Mr. Sirbu, and Mr. Kirsch. Mr. Woolford raised two counts in the counterclaim: Count One, a claim of defamation, and Count Five, a claim of civil conspiracy.

Because AAL Group's motion to dismiss Mr. Woolford's counterclaim is all that is at issue, the court's description of the facts is limited to those set out in the counterclaim that relate specifically to Counts One and Five. *See Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1265 (11th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (requiring

the court to accept as true the factual allegations in the counterclaim and construe them in the light most favorable to the counterclaim-plaintiff).

AAL Group operates out of Dubai and provides maintenance, repair, and overhaul services for aircraft. Mr. Fidelskiy owns or controls AAL Group, and Mr. Sirbu is its CEO. In 2010, Mr. Fidelskiy formed AAL USA to assist AAL Group "in securing and performance on contracts involving the U.S. government." Although Mr. Fidelskiy formed AAL USA in 2010, in 2014, he gifted complete ownership of AAL USA to Mr. Sirbu to "address concerns about foreign ownership, control, and influence issues." Mr. Sirbu is now the sole owner, CEO, and President of AAL USA. But, according to Mr. Woolford, Mr. Sirbu has "utilized AAL USA for the benefit of AAL Group, performing work and making procurements for which AAL Group refused compensation, and even requiring AAL USA to pay legal fees for AAL Group legal work." According to Mr. Woolford, Mr. Kirsch represents himself as the Vice President of AAL USA.

Mr. Woolford used to be the Chief Financial Officer for AAL USA, and is now a minority owner of a company called Black Hall Aerospace. According to Mr. Woolford, Mr. Daigle "and other management employees of AAL USA" formed Black Hall Aerospace, but AAL USA, AAL Group, Mr. Sirbu, Mr. Kirsch, and Mr. Fidelskiy have never owned any stock of Black Hall Aerospace. (Doc. 103 at 39–40, 42–45).

In September 2016, the United States Government denied AAL USA access to overseas military bases. Someone—Mr. Woolford does not explain who—informed AAL USA that the Government had denied AAL USA access because of AAL USA's connection to AAL Group. According to Mr. Woolford, the Government was concerned about the fact that Mr. Sirbu owned AAL USA *and* was the CEO of AAL Group. As a result of the denial of access, AAL USA's

3

employees, including Mr. Sirbu, developed a plan to transfer its assets, contracts, and employees to Black Hall to sever its ties to Mr. Sirbu. Black Hall would then transfer back to AAL USA certain contracts between AAL USA and AAL Group, dissociating Black Hall from AAL USA and AAL Group. (Doc. 103 at 39, 45–48).

On September 29, 2016, Black Hall and AAL USA entered an Asset Purchase Agreement. Mr. Kirsch resigned from AAL USA and began working for Black Hall. But in October 2016, AAL USA, AAL Group, Mr. Sirbu, and Mr. Fidelskiy—a group that Mr. Woolford calls the "Dubai Consortium"—decided that Mr. Sirbu "would renege on the agreements AAL USA had entered into." Mr. Sirbu convinced Mr. Kirsch to leave Black Hall and return to AAL USA, and Mr. Kirsch now "holds himself out" as AAL USA's Vice President. Together with Mr. Kirsch, the "Dubai Consortium" began conspiring to conduct a smear campaign against Mr. Woolford. (Doc. 103 at 40–41, 48–49, 51–52).

The conspirators took the following actions against Mr. Woolford: (1) creating a website falsely claiming to contain all of the court documents in a lawsuit between AAL USA and Black Hall, but in fact containing only AAL USA's filings alleging wrongdoing by Black Hall; (2) sending a letter to various government entities and companies accusing Mr. Woolford of fraud; (3) sending an email to Black Hall's employees using the fake name "John Smith" (the counterclaim does not describe what the email said or who actually sent the email); (4) circulating "throughout the government contracting industry" a copy of the initial complaint in this case, "which contains a demonstrably false, defamatory footnote regarding Woolford"; (5) telling parties to the contracts AAL USA assigned to Black Hall that Mr. Woolford had committed fraud and that AAL USA still owned those contracts; (6) contacting government officials "to falsely accuse . . Woolford of fraud"; (7) contacting Black Hall's contractual

4

partner, Leidos, and telling it that Mr. Woolford had committed fraud; (8) seeking to have the administrator of Black Hall's website close the website based on a false allegation of fraud; and (9) telling Black Hall's landlord that Mr. Woolford had committed fraud. Although Mr. Woolford attributes those actions to Mr. Sirbu and Mr. Kirsch, he does not specify which of them took which action. (Doc. 103 at 52–54).

## II. DISCUSSION

AAL Group moves to dismiss the counterclaim against it on the following grounds: (1) the defamation claim fails to allege any facts showing that Mr. Kirsch or Mr. Sirbu acted as AAL Group's agent; (2) without a viable defamation claim, the civil conspiracy claim must fail as a matter of law; and (3) the counterclaim is a shotgun pleading. (Doc. 299 at 4–9).

Rule 8 provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading must "give[ ] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) attacks the legal sufficiency of the complaint. "To survive a motion to dismiss, the counterclaim-plaintiff must plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Twombly*, 550 U.S. at 555). The court must accept as true the factual allegations in the counterclaim and construe them in the light most favorable to the counterclaim-plaintiff, making all reasonable inferences in favor of the counterclaim-plaintiff. *Id.*; *Jackson v. Okaloosa Cty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). But the court need not accept as true the counterclaim-plaintiff's legal conclusions. *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir.

5

2011). Accordingly, the court must distinguish between the counterclaim's well-pleaded factual allegations and the counterclaim's legal conclusions made without adequate factual support. *Id.* A counterclaim that provides only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not state a claim sufficient to survive a Rule 12(b)(6) motion. *Twombly*, 550 U.S. at 555.

    1.    <u>Defamation Claim</u>

AAL Group contends that Mr. Woolford's defamation claim, raised in Count One, fails because it is based on statements Mr. Kirsch and Mr. Sirbu made, but the counterclaim fails to assert any facts showing that they were acting as AAL Groups' agents. (Doc. 299 at 5–6).

Under Alabama law, a defamation claim requires the plaintiff to show:

> [1] that the defendant was at least negligent [2] in publishing [3] a false and defamatory statement to another [4] concerning the plaintiff, [5] which is either actionable without having to prove special harm (actionable per se) or actionable upon allegations and proof of special harm (actionable per quod).

*Ex parte Bole*, 103 So. 3d 40, 51 (Ala. 2012) (emphasis omitted). Also, general principles of agency law apply to defamation claims. *K-Mart Corp. v. Pendergrass*, 494 So. 2d 600, 604 (Ala. 1986) ("Basic principles of agency law operate within the area of defamation law, of course . . . ."). A principal is liable for an agent's intentional torts[1] if (1) "the agent's wrongful acts were in the line and scope of his employment"; (2) the agent's "acts were in furtherance of the business of [the principal]"; *or* (3) the principal "participated in, authorized, or ratified the wrongful acts." *Potts v. BE & K Const. Co.,* 604 So. 2d 398, 400 (Ala.1992); *see also Ex parte Lincare Inc.*, 218 So. 3d 331, 337 n.3 (Ala. 2016).

The counterclaim identifies nine statements—written and oral—made by Mr. Sirbu and Mr. Kirsch, which Mr. Woolford says constitute defamation. The counterclaim also asserts that

---

[1] Although defamation can include negligent statements, Mr. Woolford's defamation claim relates to intentional statements made by Mr. Sirbu and Mr. Kirsch.

6

Mr. Sirbu and Mr. Kirsch made those statements "with the knowledge of, as agents of, on behalf of, and in concert with Fidelskiy, AAL USA, and AAL Group." (*See* Doc. 103 at 53–54, 58). AAL Group does not dispute that Mr. Woolford's counterclaim states a claim of defamation as to some of the counterclaim-defendants against whom Mr. Woolford brings it. Instead, AAL Group argues that the only people alleged to have made a defamatory statement were Mr. Kirsch and Mr. Sirbu, and that Mr. Woolford fails to allege facts showing that they were acting as AAL Group's agents.

First, AAL Group contends that it is not liable for any statements Mr. Kirsch made because Mr. Kirsch is not and was not an employee of AAL Group. (Doc. 299 at 5 n.2; Doc. 359 at 7–8). AAL Group points to no precedent holding that, under Alabama law, a company's agent must be an employee of the company, and the court has not located any such precedent; to the contrary, Alabama law does not appear to require a formal employment relationship to create a principal-agent relationship. *Cf. Ware v. Timmons*, 954 So. 2d 545, 553 n.9 (Ala. 2006) ("Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other act on his behalf and subject to his control, and consent by the other so to act.") (quoting *Restatement (Second) of Agency* § 1 (1958)); *see also Potts,* 604 So. 2d at 400 (providing that a principal may be liable for an agent's acts if, among other things, the agent's "acts were in furtherance of the business of [the principal]" or the principal "participated in, authorized, or ratified the wrongful acts").

Nevertheless, the court concludes that the counterclaim fails to allege any facts *showing* that Mr. Kirsch is AAL Group's agent. The counterclaim alleges that Mr. Kirsch works for AAL *USA* and, for a period of time, worked for Black Hall. (Doc. 103 at 51–52, 54–55). But it alleges no facts indicating that AAL *Group* exerted any control over Mr. Kirsch's actions.

Mr. Woolford's allegation that AAL Group, through Mr. Sirbu, continues to exert control over AAL USA, is not enough to show that AAL Group also controls Mr. Kirsch—a man who, according to Mr. Woolford, only "represents" that he is the Vice President of AAL USA. (*See* Doc. 103 at 40). In short, the counterclaim presents no *factual allegations* that, if true, would show an agency relationship between AAL Group and Mr. Kirsch. And the court must disregard conclusory statements made without adequate factual support. *See Mamani*, 654 F.3d at 1153. The court WILL DISMISS the defamation claim to the extent it is based on statements made by Mr. Kirsch.

But Mr. Sirbu presents a different story. According to Mr. Woolford, Mr. Sirbu is the CEO of AAL Group, and the owner, CEO, and President of AAL USA. And, accepting as true the allegations in the counterclaim, Mr. Sirbu has been using AAL USA for AAL Group's benefit, requiring AAL USA to (1) do work without compensation from AAL Group, and (2) pay for legal work on AAL Group's behalf. (Doc. 103 at 40, 43). In short, Mr. Woolford's factual allegations support his assertion that Mr. Sirbu has been acting as AAL Group's agent, because Mr. Sirbu's actions have been "in furtherance of the business of [AAL Group]." *Potts,* 604 So. 2d at 400. The court WILL NOT DISMISS the defamation claim as to any statements made by Mr. Sirbu.

    2.    Civil Conspiracy Claim

AAL Group makes two arguments in support of its motion to dismiss Count Five, which is a claim of civil conspiracy. First, AAL Group contends that the civil conspiracy claim fails to identify any tortious acts by AAL Group. (Doc. 299 at 9). But Mr. Woolford raised only two claims—Count One, a defamation claim, and Count Five, a civil conspiracy claim. As a result, the court infers that the civil conspiracy claim rests on the underlying defamation claim.

Second, AAL Group contends that, without a defamation claim, the counterclaim-defendants cannot have engaged in a civil conspiracy. (Doc. 299 at 9). As discussed above, at least part of Mr. Woolford's defamation claim will survive AAL Group's motion to dismiss, so this argument fails without the need for further discussion. The court WILL NOT DISMISS the civil conspiracy claim.

3. Shotgun Pleading

Finally, AAL Group seeks the dismissal of the counterclaim on the basis that the counterclaim is a shotgun pleading. The Eleventh Circuit has repeatedly condemned so-called "shotgun pleadings." *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320–23 (11th Cir. 2015); *Magluta v. Samples*, 256 F.3d 1281, 1284 (11th Cir. 2001). The Court has described several different types of shotgun pleadings, the most common of which is "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland*, 792 F.3d at 1321.

The Eleventh Circuit has explained that shotgun pleadings are problematic because "they fail to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323. And although a district court has authority to dismiss a pleading for being a shotgun pleading, the court must first "allow a litigant one chance to remedy such deficiencies" by requiring repleading. *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018).

Technically, Mr. Woolford's counterclaim is a shotgun pleading in the sense that each count incorporates all of the paragraphs preceding that count. But, because the court can tell which facts support Mr. Woolford's claims against AAL Group, the court will not dismiss it nor

9

order Mr. Woolford to replead it on that basis. *See Weiland*, 792 F.3d at 1319–24 (concluding that the district court abused its discretion by dismissing a complaint as a shotgun pleading because, although the complaint was "not a model of efficiency or specificity, . . . it [did] put [the defendants] on notice of the specific claims against them and the factual allegations that support those claims"). As the Eleventh Circuit said in *Weiland*, "this is not a situation where a failure to more precisely parcel out and identify the facts relevant to each claim materially increase[s] the burden of understanding the factual allegations underlying each count." 792 F.3d at 1324.

Count One—the defamation claim—states that Mr. Sirbu and Mr. Kirsch, acting as agents of Mr. Fidelskiy, AAL USA, and AAL Group, made defamatory statements that Mr. Woolford committed fraud and "tricked or duped Sirbu into the [Asset Purchase Agreement]." (Doc. 103 at 58). And the factual description section of the counterclaim lists the allegedly false statements. (*See id.* at 53–54). The court finds the counterclaim clear enough to withstand a challenge on shotgun-pleading grounds.

Count Five, Mr. Woolford's civil conspiracy claim, merely identifies a conspiracy "to commit the tortious acts described above." (Doc. 103 at 63). The 78 paragraphs preceding Count Five describe a number of torts. A number of those paragraphs relate to counterclaims that the court has dismissed pursuant to the settlement between other parties. By excluding those paragraphs, only two counts remain in the counterclaim: Mr. Woolford's claims of defamation and civil conspiracy. (*See* Doc. 103 at 58–64). As a result, the court can now tell with ease that Mr. Woolford's civil conspiracy claim rests on the tort of defamation, as set out in Count One.

The court concludes that, although Mr. Woolford's counterclaim fits the technical definition of a shotgun pleading, the court need not dismiss the counterclaim on that basis. The

court WILL DENY AAL Group's motion to dismiss on the basis that the counterclaim is a shotgun pleading because the counterclaim provides sufficient notice of the basis for Mr. Woolford's claims.

### III. CONCLUSION

The court WILL GRANT IN PART AND DENY IN PART AAL Group's motion to dismiss the counterclaim. The court WILL DISMISS WITHOUT PREJUDICE the defamation claim against AAL Group only to the extent that it rests on allegedly defamatory statements made by Mr. Kirsch. But the court WILL NOT DISMISS any other part of the counterclaim.

**DONE** and **ORDERED** this 19th day of June, 2018.

*[signature]*
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE